# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: May 31, 2018

```
* * * * * * * * * * * * * * * * * * * *
A.A. a minor, by her parents         *
KRISTINE AKERS and                   *          UNPUBLISHED
MATTHEW AKERS,                       *
                                     *          No. 15-597V
              Petitioners,           *
v.                                   *          Special Master Gowen
                                     *
SECRETARY OF HEALTH                  *          Interim Attorneys' Fees and Costs;
AND HUMAN SERVICES,                  *          Administrative Tasks; Expert Rates.
                                     *
              Respondent.            *
* * * * * * * * * * * * * * * * * * * *
```

William E. Cochran, Jr., Black McLaren et al., PC, for petitioners.
Ilene C. Albala, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On May 14, 2018, Kristine Akers and Matthew Akers, on behalf of their minor daughter A.A. ("petitioners") filed an application for interim attorneys' fees and costs. Petitioners' Interim Application ("Pet. Int. App.") (ECF No. 92). For the reasons discussed below, the undersigned **GRANTS** petitioners' application and awards a total of $328,705.92 in interim attorneys' fees and costs.

I.   **Procedural History**

On June 27, 2014, petitioners contacted the current counsel of record, Will Cochran, regarding filing a claim in the National Vaccine Injury Compensation Program ("Vaccine Act" or "Vaccine Program").[2] Mr. Cochran began work on the case, along with his colleague Michael

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." Id. **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012)

McLaren, associates, and paralegals at the firm of Black McLaren et al. After conferring several times with petitioners and obtaining medical records from numerous providers, the claim was filed on June 12, 2015. See Pet. Int. App., Exhibit 2 at 1-8; Petition (ECF No. 1). The petition avers that A.A. received diphtheria-tetanus acellular pertussis ("DTaP") and several other vaccinations at her six-month well-child visit. Petitioners allege that these vaccines caused-in-fact or significantly aggravated a seizure disorder in A.A. Petition at 1.

On July 29, 2015, the undersigned held an initial status conference. Scheduling Order (ECF No. 9). On September 23, 2015, respondent indicated that he did not wish to explore informal resolution and would instead defend the case. Status Report (ECF No. 10). The parties proceeded to obtain expert reports and develop their opinions on causation.

Petitioners first retained a geneticist, Dr. Richard G. Boles, who discussed that genetic testing had discovered a missense mutation on A.A.'s EFCH1 gene. He opined that this mutation was a risk factor for developing a seizure disorder, but it likely needed an environmental trigger such as a vaccine. Petitioner's Exhibit ("Pet. Ex.") 29, filed April 29, 2016. On the same day, petitioners filed a supporting report from a neurologist, Dr. Marcel Kinsbourne. Pet. Ex. 32.

On October 11, 2016, respondent filed a responsive report from a neurologist, Dr. Gerald Raymond. He opined that A.A.'s condition likely has a genetic component, but the vaccinations did not play any role. Respondent's ("Resp.") Ex. A. On the same day, respondent filed a Rule 4(c) report recommending against compensation. Resp. Report.

Following a Rule 5 status conference on December 1, 2016, I ordered the parties to file supplemental expert reports and I reserved dates for an entitlement hearing. Scheduling Order (ECF No. 36); Hearing Order (ECF No. 39).

Petitioners then filed additional reports from Dr. Boles (Pet. Ex. 61); Dr. Kinsbourne (Pet. Exs. 64, 102); and an immunologist, Dr. M. Eric Gershwin (Pet. Ex. 91). Respondent filed additional reports from Dr. Raymond (Resp. Exs. FF, HHHH); an immunologist, Dr. Christine McCusker (Resp. Exs. GG, III); and a neuroradiologist, Dr. Michael Kohrman (Resp. Exs. BBBB, JJJJ). These reports further discussed possible vaccine causation and A.A.'s EFCH1 mutation, as well as her new diagnosis of cortical dysplasia. I held a prehearing status conference on October 4, 2017. Scheduling Order (ECF No. 57). Afterwards, the parties filed separate and joint prehearing submissions. (ECF Nos. 64, 68, 72, 75).

An entitlement hearing took place in Detroit, Michigan on February 6 – 8, 2018. See Transcript (ECF Nos. 85-87). Petitioner Kristine Akers offered fact testimony. Petitioners also presented expert testimony from Dr. Boles, Dr. Kinsbourne, and Dr. Gershwin. Respondent presented expert testimony from Dr. Raymond, Dr. McCusker, and Dr. Kohrman.

---

(hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

After post-hearing status conferences on February 27, 2018, and April 4, 2018, I directed respondent to file the annotated MRI images that were discussed during the hearing. At petitioners' request, I agreed that the parties could file further expert reports to discuss the extent of A.A.'s focal cortical dysplasia. Scheduling Order (ECF No. 83); Scheduling Order (ECF No. 89). On April 24, 2018, respondent filed the MRI images. Resp. Ex. UUUU. On May 7, 2018, petitioners filed further reports from Dr. Kinsbourne (Pet. Ex. 140); Dr. Gershwin (Pet. Ex. 138); and a radiologist, Dr. Robert Kessler (Pet. Exs. 136, 139). I directed respondent to file any responsive reports within 30 days, by June 7, 2018. Scheduling Order (Non-PDF, entered May 8, 2018).

On May 14, 2018, petitioners filed the present application for interim attorneys' fees and costs. They request $242,621.15 in attorneys' fees and $131,018.33 in attorneys' costs. Thus, the total interim request is for $373,639.48. See Pet. Int. App. at 11. On May 22, 2018, respondent filed a response to petitioner's motion. Resp. Response (ECF No. 92). "In this case, respondent defers to the special master to determine whether or not petitioner has met the legal standard for interim attorneys' fees and costs award, as set forth in Avera v. Secretary of Health and Human Services, 515 F.3d 1345 (Fed. Cir. 2008)." Id. at 2. "With that exception, respondent is satisfied that the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. "Respondent respectfully recommends that the special master exercise his discretion and determine a reasonable award for attorneys' fees and costs." Id. at 3. Thus, this matter is now ripe for review.

## II.     Analysis

### A.  Interim Attorneys' Fees and Costs

Section 300aa-15(e) of the Vaccine Act permits an award of reasonable attorneys' fees and costs. In addition, the Vaccine Act permits interim attorneys' fees and costs. Avera, 515 F.3d at 1352; Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010). When a petitioner has yet to prove entitlement, the special master may grant an interim award of reasonable attorneys' fees and costs if the special master "determines that the petition was brought in good faith and there was a reasonable basis for the claim." § 300aa-15(e)(1)(B); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). Based on respondent's statement that these statutory requirements are met and my own review, I find that this claim was brought in good faith and on a reasonable basis.

In Shaw, the Federal Circuit held that it was proper to grant an interim award when "the claimant establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375 (emphasis added). In Avera, the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. I do not routinely grant interim fee applications. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. If any one of these conditions exists, I generally defer ruling until the condition is resolved or until an entitlement hearing has occurred. But

3

ultimately, there are many factors bearing on the merit of an interim fee application and I evaluate each one on its own merits.

However, I find that an interim award is appropriate here. The claim has been pending for nearly three years. The fees and the expert costs requested at this time easily surpass the thresholds set forth above. This is understandable, as the case presented a complex and evolving medical condition which justified each party's retention of multiple experts. The case has also changed over time. Initially, the focus was on whether A.A.'s vaccinations and/ or the EFCH1 genetic variant had caused her seizure disorder. As the case progressed, the focus shifted from the EFCH1 genetic variant to A.A.'s diagnosis of focal cortical dysplasia. The next deadline is for respondent to file responsive expert report(s) by June 7, 2018. While they have not been set, further proceedings in the entitlement phase (such as post-hearing briefs, an opinion on entitlement, and any appellate proceedings) will likely take several months. If petitioners prevail on entitlement, the case will then need to move through the damages phase, which may also take significant time. Because of the protracted nature of the proceedings to date, the fact that costly expert reports have been obtained, and the likelihood that the case will not be ultimately resolved in the near future, I find that it is appropriate to award interim attorneys' fees and costs at this juncture.

## B. Evaluation of Requested Attorneys' Fees and Costs

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348. Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees. See Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs." Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed. Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 483 (1991), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. Wasson, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. Id. at 484 n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

### 1. Hourly Rates

After a detailed review, I find that the hourly rates requested are generally reasonable. Mr. Cochran, Mr. McLaren, their associates, and their paralegals work at the firm of Black McLaren et al., located in Memphis, Tennessee. They have been repeatedly found to be "in-forum" and therefore entitled to the forum rates I first formulated in McCulloch v. Sec'y of Health & Human Servs., No. 09-239V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[3]

The interim fee application provides the following hourly rates:

|  | **2014** | **2015** | **2016** | **2017** | **2018** |
|---|---|---|---|---|---|
| **Michael G. McLaren** | N/A | $410 | $425 | $440 | $456 |
| **William E. Cochran Jr.** | $335 | $345 | $355 | $365 | $378 |
| **Chris J. Webb** | $285 | N/A | $305 | N/A | N/A |
| **Law Clerks** | $140 | N/A | $145 | $148 | $153 |
| **Paralegals** | $130 | $135 | $140 | $145 | N/A |

I and other special masters have previously concluded that the requested rates for 2014 – 2017 are consistent with the ranges set forth in McCulloch and the fee schedules for subsequent years. Thus, they are reasonable and should be awarded. See, e.g., Neeley v. Sec'y of Health & Human Servs., No. 16-251V, 2017 WL 7510722 (Fed. Cl. Spec. Mstr. Dec. 29, 2017); Dempsey v. Sec'y of Health & Human Servs., No. 04-394V, 2017 WL 6343870 (Fed. Cl. Spec. Mstr. Dec. 6, 2017). I will also award these rates in the present case.

As shown in the table above, the interim fee application requests increased rates for 2018. These increased rates are still within the ranges set forth in the fee schedule for 2018. Additionally, each increase reasonably reflects the cost of inflation plus each individual's slightly increased experience. I find that these increased rates are reasonable and should be awarded.[4]

### 2. Hours Expended

As stated above, a line-by-line evaluation of the fee application is not required and will not be performed. See Wasson, 24 Cl. Ct. at 484. Instead, I may rely on my experience to determine a reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests

---

[3] The McCulloch forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website. The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

[4] The interim fee application provides that a 3.7% annual growth rate was utilized in determining the requested hourly rates. Petitioners' counsel is correct that the 3.7% annual growth rate has previously been used to determine what increase in an attorney's hourly rate reasonably accounts for inflation. However, beginning in 2017, special masters have found the Producer Price Index – Office of Lawyers ("PPI-OL") to be a persuasive measure of inflation. See OSM Attorneys' Forum Hourly Rate Schedules for 2017 and 2018, available at http://www.uscfc.uscourts.gov/node/2914.

…. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521. Based on a close review of the billing entries and my knowledge of the case, I find that the hours expended in the case are generally reasonable. However, there are certain issues that bear further discussion.

### a. Administrative Tasks

First, it is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of Health & Human Servs., 2016 WL 720969, *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); Dempsey, 2017 WL 6343870, *6 (Chief Special Master Dorsey's discussion of entries that were administrative in nature, in another fee application submitted by Black McLaren et al.).

In this case, the time sheets reflect numerous entries, primarily by law clerks and paralegals, for tasks that were administrative in nature. These tasks include downloading files; scanning and saving files; creating folders and subfolders; copying; faxing; preparing compact discs; preparing shipping labels; mailing documents; and corresponding with Court staff to schedule status conferences.[5] These types of entries do not constitute billable time. Thus, the fee award will be adjusted accordingly.[6]

### b. Additional Billing Issues

Special masters have also found it appropriate to reduce a fee award for vagueness; block billing; and unnecessary or redundant entries. See e.g., Dempsey, 2017 WL 6343870, *6-7. These issues are also apparent in this case. Many entries are difficult to evaluate because they are block-billed. For example, the law clerks and paralegals often entered paralegal tasks (such as preparing the petition for filing) together with tasks that were clearly administrative in nature (such as making copies). See, e.g., Pet. Int. App., Ex. 2 at 8.

Certain entries seem redundant. For example, Mr. Cochran, Mr. McLaren, and a paralegal all entered time for reviewing a notice of appearance by respondent's counsel Ms. Alexis Babcock. Similarly, all three seemed to enter time for reviewing the later notice of appearance by respondent's new counsel Ms. Ilene Albala. Pet. Int. App., Exhibit 2 at 21.[7]

---

[5] See, e.g., Pet. Int. App., Ex. 2 at 2-12; 19, 22.

[6] The entries listed above do not constitute an exhaustive list of administrative entries in this application's billing entries, but rather are intended to serve as an example of those types of entries.

[7] The dates of Mr. McLaren's billing entries are somewhat confusing. He entered 0.1 hours to "go over notice of appearance" on October 3, 2016 (the day before Ms. Babcock entered her appearance). He entered another 0.1 hours to "go over new notice of appearance" on October 12, 2016, but Ms. Albala did not enter her appearance until October 24, 2016. Pet. Int. App., Exhibit 2 at 21; Notices of Appearance (ECF Nos. 31, 35).

### c. Conclusion on Hours Expended

For these reasons, I find it is appropriate to reduce the requested attorneys' fees. As noted above, in making reductions, a line-by-line evaluation is not required. Wasson, 24 Cl. Ct. at 484. Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Based on my review and experience, petitioners' fee request is reduced by 5 percent. **This results in a deduction of $12,131.06 from the interim fee award.**

### 3. Reasonable Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira, 27 Fed. Cl. 29, 34. In this case, petitioners' requested costs include filing the claim; obtaining medical records; obtaining the expert opinions to date; and travel to meet with petitioners, meet with the experts, and participate in the entitlement hearing. These are generally well-documented and reasonable. The most substantial costs come from the several experts retained in the case. While I will award the majority of the expert costs incurred to date, certain adjustments are merited.

### a. Dr. Gershwin

First, petitioners request $36,562.50 in interim costs for their expert Dr. Gershwin. His requested rate for all work performed (including research, writing, and testifying at the hearing[8]) is $450 per hour.[9] I and other special masters have previously approved this rate. I find it appropriate to do so here. Based on my knowledge of the case and Dr. Gershwin's detailed invoices, I find the hours expended to be generally reasonable. However, the last two invoices relate to work completed after the entitlement hearing on February 6-8, 2018. They are dated February 26, 2018, and April 23, 2018. The invoices reflect that Dr. Gershwin reviewed the entitlement hearing testimony and prepared a response. Pet. Int. App., Ex. 2 at 223, 261. This is most likely petitioners' exhibit 138, Dr. Gershwin's post-hearing rebuttal report, filed on May 7, 2018. While petitioners were permitted to file further expert reports following the hearing, respondent has not yet filed a response to the same. Thus, I have not had a full opportunity to review these post-hearing reports. Therefore, at this time, I will defer awarding costs for the last two invoices. **This results in a deduction of $5,287.50 from the interim fee award.**

### b. Dr. Kinsbourne

Petitioners also request $53.975 in interim costs for another expert, Dr. Kinsbourne. His requested rate for all work performed is $500 per hour. Dr. Kinsbourne is a respected neurologist with several decades of experience opining in the Vaccine Program. In this case, his opinion

---

[8] As Dr. Gershwin testified via videoconference, he has not billed for travel time or expenses.

[9] Dr. Gershwin's itemized invoices actually provide a standard hourly rate is $500, but if paid promptly (within approximately two months of the invoice's conveyance to petitioners' counsel), the rate is reduced to $450. Pet. Int. App., Ex. 2 at 181, 195, 211, 223, 261. Petitioners' counsel's costs sheet lists the reduced amounts that would be consistent with prompt payment. Pet. Int. App., Ex. 2 at 73-75. Therefore, petitioners' counsel will be reimbursed for the same.

appears plausible and measured.  However, the record does not demonstrate that his requested rate of $500 per hour is justified.  While Dr. Kinsbourne opined on the clinical appearance of epilepsy in children, he has not personally treated children with epilepsy for over two decades.  See Tr. 247-48.  Additionally, this case involved multiple issues outside of Dr. Kinsbourne's expertise.  To date, petitioners have also retained a geneticist, an immunologist, and a radiologist.  Based on similar factors, Chief Special Master Dorsey has found it appropriate to reduce Dr. Kinsbourne's rate to $400.  Raymo v. Sec'y of Health & Human Servs., No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016), aff'd 129 Fed. Cl. 691 (2016); Faoro v. Sec'y of Health & Human Servs., No. 10-704V, 2014 WL 5654330 (Fed. Cl. Spec. Mstr. Oct. 15, 2014).  I find Chief Special Master Dorsey's reasoning to be persuasive and will do the same here.  Therefore, Dr. Kinsbourne will be awarded $400 per hour for work and fifty percent (50%) of that rate, or $200 per hour, for travel.  **This results in a deduction of $8,815.00 from the interim award.**

Dr. Kinsbourne's invoice includes 19.8 hours of work expended after the hearing, in March – May 2018.  This work includes conferring with counsel; reviewing the trial transcript and the MRI slides; medical literature research; and preparing a supplemental expert report which was filed as Petitioners' Exhibit 140 on May 7, 2018.  Pet. Int. App., Ex. 2 at 265.  As discussed above regarding Dr. Gershwin, I do not find it appropriate to award costs for expert opinions so quickly, before respondent has had the opportunity to respond.  Therefore, these costs will be deducted from the interim award.  **This results in a deduction of $9,900.00 from the interim award.**

### c. Dr. Boles

Petitioners request $18,500 in interim costs for Dr. Richard Boles's work performed up until January 17, 2018.  His invoice provides that his rate is "$800.00 per hour in courtroom/deposition" and "$500.00 per hour for all other charges."  Pet. Int. App., Ex. 2 at 192-94.

As his CV indicates, Dr. Boles is an experienced, published geneticist.  His qualifications may be comparable to other experts in the Vaccine Program who are awarded as much as $500 per hour.  However, Dr. Boles has very little experience in the Vaccine Program.  He has not previously been awarded the requested rates or provided additional arguments why he should.  I find a reasonable rate for Dr. Boles to be $350 per hour.  Accord Faoro, 2014 WL 5654330 (awarding Dr. Boles $350 per hour); see also Dempsey, 2017 WL 6343870 (awarding him $300 per hour).  **This results in a deduction of $5,550.**[10]

### d. Dr. Kessler

Lastly, petitioners request $3,250 in interim costs for their expert Dr. Kessler.  Pet. Int. App., Ex. 2 at 214, 262.  He is a radiologist retained by petitioners' counsel following the

---

[10] The present interim fee application does not request costs for Dr. Boles's participation in the entitlement hearing. However, I will note that Dr. Boles's invoice provides a higher rate of $800.00 per hour in courtroom deposition. I am aware that in other types of cases, experts sometimes request higher rates for appearing in court or at depositions than for preparing opinions. But in the Vaccine Program, an expert is typically awarded one hourly rate for all work done in a case. If and when I have the occasion to address the cost of Dr. Boles's participation in the hearing, I am inclined to find that his requested higher rate is "clearly excessive." Dempsey, 2017 WL 6343870, *8-9.

entitlement hearing. His first two reports, along with his curriculum vitae, were filed on May 7, 2018. Pet. Exs. 136, 137, 139. As noted above, respondent currently has the opportunity to file responses to the post-hearing reports from Dr. Kessler, Dr. Gershwin, and Dr. Kinsbourne. Afterwards, I will review the reports and set further proceedings. As discussed above regarding Dr. Gershwin and Dr. Kinsbourne, at this time I will not award costs for the post-hearing expert reports. **Accordingly, $3,250 is deducted from the interim award.**

### III. Conclusion

In accordance with the foregoing, petitioners' application for interim attorneys' fees and costs is **GRANTED**. I find that they are entitled to the following reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $242,621.15 |
| Reduction for Billing Issues (5%) | -$ 12,131.06 |
| **Attorneys' Fees Awarded:** | **$230,490.09** |
| | |
| Attorneys' Costs Requested: | $131,018.33 |
| Dr. Gershwin – deferral of post-hearing costs | -$ 5,287.50 |
| Dr. Kinsbourne – reduced rate | -$ 8,815.00 |
| Dr. Kinsbourne – deferral of post-hearing costs | -$ 9,900.00 |
| Dr. Boles – reduced rate | -$ 5,550.00 |
| Dr. Kessler – deferral of post-hearing costs | -$ 3,250.00 |
| **Attorneys' Costs Awarded:** | **$ 98,215.83** |
| | |
| **Total Attorneys' Fees and Costs Requested:** | **$328,705.92** |

Accordingly, I award the following:

1) **A lump sum in the amount of $328,705.92, representing reimbursement for *interim* attorneys' fees, in the form of a check payable jointly to petitioners and their counsel, William E. Cochran Jr. of Black McLaren et al., PC.[11]**

In the absence of a motion for reconsideration or a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[12]

**IT IS SO ORDERED.**                    s/Thomas L. Gowen
                                        Thomas L. Gowen
                                        Special Master

---

[11] This amount (together with any final award of attorneys' fees and costs when the case is resolved) is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir. 1991).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties separately or jointly filing notice renouncing their right to seek review.